**[J-48-2019] [MO: Saylor, C.J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | |
|---|---|
| ADAM BRIGGS, PAULA BRIGGS, HIS WIFE, JOSHUA BRIGGS AND SARAH H. BRIGGS, | : No. 63 MAP 2018 |
| | : |
| | : Appeal from the Order of the Superior |
| | : Court dated April 2, 2018, |
| Appellees | : Reconsideration Denied on June 8, |
| | : 2018, at No. 1351 MDA 2017 |
| | : Reversing the Order of the |
| v. | : Susquehanna Court of Common |
| | : Pleas, Civil Division, dated August 8, |
| | : 2017 at No. 2015-01253. |
| SOUTHWESTERN ENERGY PRODUCTION COMPANY, | : |
| | : ARGUED: September 12, 2019 |
| | : |
| Appellant | : |

## CONCURRING AND DISSENTING OPINION

**JUSTICE DOUGHERTY**                                    **DECIDED: January 22, 2020**

I join the majority's holding that the rule of capture remains effective in Pennsylvania to protect a developer from trespass liability where there has been no physical invasion of another's property. In so holding, the majority correctly recognizes that if there **is** such a physical invasion the rule of capture will **not** insulate a developer engaged in hydraulic fracturing from trespass liability. As I agree with both propositions, I also agree the matter should be remanded for further proceedings involving a specific inquiry into a physical invasion. I respectfully dissent, however, from the notion that this question must be determined by the Superior Court on the present record, and would instead remand to the trial court for completion of the discovery that was forestalled by erroneous summary judgment, and for trial, if necessary.

The learned majority has expertly explained the rule of capture and its purpose in our jurisprudence related to oil and gas drilling; in my view, the rule was a reasonable innovation in response to the inherent nature of underground gas and oil deposits, that is, their "fugitive" nature, and their tendency to move freely deep inside the earth and "escape" across surface property lines "without the volition of the owner." *Westmoreland & Cambria Nat. Gas Co. v. DeWitt*, 18 A. 724, 725 (Pa. 1889). The majority also correctly recognizes the Superior Court erred in focusing — in its decision not to apply the rule in this case involving hydraulic fracturing — on the "artificial" mechanisms of fracking. However, I cannot agree with the majority's rationale and disposition for the following reasons.

First, my review reveals the majority's repeated suggestion that the plaintiffs did not consistently make allegations of a physical invasion in their trespass case is erroneous and misleading. *See, e.g.*, Majority Opinion, slip op. at 8, 9, 10, 11, 17, 18, 25. As the majority itself recognizes, fracking — by definition — involves the injection of fluid and proppants into the earth, with the expected and intended result they will move horizontally in all directions, for long distances, to create new fractures (or join with existing ones) to allow drainage up to the driller's wellbore. *See id.* at 4-5, *quoting from* EPA ("These fractures can extend several hundred feet away from the wellbore."). *See also Coastal Oil & Gas Corp. v. Garza Energy Trust*, 268 S.W.3d 1, 7 (Tex. 2008) (fracking fluid travels "sometimes as far as 3,000 feet from the well"); *id.* at 33 n.34 (Willett, J., concurring) (typical fracture runs 2,500-4,500 feet from wellbore) (citation omitted). Indeed, at every stage of the litigation, there was no dispute among the parties that plaintiffs alleged a trespass — which by definition involves a physical invasion[1] — caused

---

[1] *See, e.g.*, Majority Opinion, slip op. at 19 ("In Pennsylvania, a trespass occurs when a person who is not privileged to do so intrudes upon land in possession of another, whether willfully or by mistake.").

by fracking — which by necessity involves underground injection and dispersal of fluid and proppants across great distances of underground territory. *See, e.g.*, Majority Opinion, slip op. at 9 (noting Southwestern's argument in support of summary judgment that it did not physically invade Plaintiffs' property). *Compare id.* at 27 (observing Plaintiffs did not expressly mention a physical intrusion in response to defendant's motion for summary judgment) *with id.* at 9-10 (noting Plaintiffs used intrusion verbiage in their motion for partial summary judgment). *See also Coastal Oil*, 268 S.W.3d at 37 (Willett, J., concurring) ("[Fracking] involves the injection of fluids across lease lines, but . . . is not a trespass because [it] is not wrongful because [it] generates societal and economic benefits that outweigh any harm to individual operators."). I reject the notion that Plaintiffs had to use the magic words "invasion" or "intrusion" at every turn in order to apprise Southwestern of the nature of their trespass claim, and I cannot agree with the majority's unfair characterization of the plaintiffs' case as somehow lacking in this regard.

Additionally, and for the same reason, I cannot agree that the Superior Court considered this pivotal question of physical intrusion *sua sponte*, as the majority posits, *see* Majority Opinion, slip op. at 19. In my view, the panel simply confronted the issues as the parties themselves have litigated them, and I would emphasize it is for this same reason Southwestern did not challenge the Superior Court's holding in this regard. *See id.* at 14 (Southwestern did not question Superior Court's ruling based in part on the premise that Plaintiffs' claims were grounded on allegations fluid/proppants were injected into their property).[2]

---

[2] I reach the same conclusion regarding the question presented in this appeal. Contrary to the majority's view that the idea of a physical intrusion is "not fairly subsumed within the issue framed for our review," *see* Majority Opinion, slip op. at 21, it is clear to me that the phrasing of the question as pertaining to fracking fluids that are "injected solely on or beneath the driller's own property" inherently includes the idea that those fluids — while injected at the driller's wellbore site — are by definition injected with the intention that they

In fact, the complaint states that, by the use of its "units" adjacent to Plaintiffs' land, Southwestern "continues to extract natural gas from under the land of the Plaintiffs," and that these actions were a "past and continuing trespass" on Plaintiffs' land. Complaint at ¶¶8-9, 11, 14; *see also* Answer to New Matter and Counterclaim at ¶61.1 ("Plaintiffs allege that natural gas is being extracted from under their land by way of wells, the boreholes of which are located on [Southwestern's leaseholds]."). As the majority notes, Southwestern did not file preliminary objections in the nature of a demurrer; instead, Southwestern has consistently focused, *inter alia*, on the rule of capture as their defense to the Plaintiffs' trespass action. *See, e.g.*, Answer, New Matter and Counterclaim at ¶¶36-39.

Moreover, Plaintiffs' three sets of interrogatories served on Southwestern included numerous questions about the horizontal distance from each side of a Southwestern borehole from which Southwestern reasonably anticipated extracting natural gas, and the filings related to both summary judgment motions included discussion of trespass by physical intrusion beneath Plaintiffs' property. For example, Plaintiffs opposed summary judgment by arguing, *inter alia*, that truthful answers to these interrogatories — the subject of an outstanding motion to compel the trial court ultimately denied as moot — would "readily demonstrate the extent of the intrusion under" their property. Brief of Plaintiffs in Opposition to [Southwestern's] Supplemental Brief in Support of Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Partial Summary Judgment at 3.[3]

---

will be disseminated horizontally in all directions for great distances, and the majority itself concedes there is "some evidentiary support . . . for the concept that fracturing fluid and/or proppants may have been propelled beneath Plaintiffs' land." *Id.* at 25 n.17.

[3] I disagree with the majority's suggestion discovery was complete when judgment was entered. Majority Opinion, slip op. at 9 (stating Southwestern's summary judgment motion was filed "[a]fter the parties engaged in discovery"). It is clear that Plaintiffs' outstanding motion to compel Southwestern's response to interrogatories was denied as moot in the summary judgment order. Order dated 8/8/17; *see also* Majority Opinion, slip op. at 9-10. Plaintiffs expressly objected to determination of the motion for summary

Plaintiffs also relied on an expert report indicating at least one of Southwestern's boreholes is located within 63 feet of their land, when the relevant "fracking area" could be approximately 371 feet each way from a borehole. *Id.* at 2. *See also* Plaintiffs' Brief in Opposition to SWN's Motion for Summary Judgment and in Support of Their Motion for Summary Judgment at 4 (explaining a trespass "may be made by causing or permitting a thing to cross the boundary of the premises") (citation omitted); 6 (noting that, with respect to horizontal fractures caused by injection of fluids, nothing can be done to control their direction) (citation omitted); 16-17 (explaining, with respect to statute of limitations, manner of entry onto Plaintiffs' land is by hydrofracturing far underground). Under the circumstances, in my view, the argument that Southwestern's fracking activities effected a physical intrusion upon Plaintiffs' property has always been at the crux of the present litigation.

Finally, I make the following observations relating to the rule of capture in the context of fracking of non-conventional shale deposits. First, although I recognize natural gas has a "fugacious" nature regardless of whether it lies in an open pool or in a sandstone or shale deposit, it is clear that natural gas trapped in shale drains naturally much more slowly than from a pool or from other materials; indeed, this is the very reason developers engage in fracking, to make shale gas development productive faster, that is, more efficient and economically viable. The practice exploits natural shale fractures and creates new ones, and with present technology, much remains mysterious about precisely what happens so far beneath the surface. However, I do not view this uncertainty as a basis to absolve developers from trespass liability if a plaintiff can prove the fluids and proppants they intentionally injected into their wellbores travelled

judgment because discovery was outstanding and the case was therefore not "ripe for resolution." Plaintiffs' Motion to Stay Resolution of Defendant's Motion for Summary Judgment, 1-2.

horizontally across property lines and caused drainage of gas previously trapped under the plaintiff's land.

Moreover, the industry routinely divides royalties payable on natural gas produced among multiple landowners on whose property the extraction is known to be taking place, *i.e.*, methods exist to measure or estimate these amounts. *See* Appellees' Brief at 25-26; 58 P.S. §34.1 ("Where an operator has the right to develop multiple contiguous leases separately, the operator may develop those leases jointly by horizontal drilling unless expressly prohibited by a lease. In determining the royalty where multiple contiguous leases are developed, in the absence of an agreement by all affected royalty owners, the production shall be allocated to each lease in such proportion as the operator reasonably determines to be attributable to each lease."); *see also Bailets v. Pa. Turnpike Comm'n*, 181 A.3d 324, 336 (Pa. 2018) ("Generally, under Pennsylvania law, damages need not be proved with mathematical certainty, but only with reasonable certainty, and evidence of damages may consist of probabilities and inferences."). I do not view the difficulty as a barrier to fact-finding, and I disagree that only the General Assembly can provide the necessary relief to small, landlocked landowners such as Plaintiffs here. *See* Majority Opinion, slip op. at 23.[4]

Given the majority's holding that the rule of capture does not preclude a trespass if there is a physical invasion, I would affirm the Superior Court's disposition insofar as it vacated summary judgment and remanded for further factual development. *Briggs*, 184

---

[4] Notably, Plaintiffs once had a lease with Southwestern, which was not renewed. Appellees' Brief at 39. It appears Southwestern, having leased the properties on three sides of Plaintiffs' parcel and potentially recovering drainage from beneath all of their land by fracking, *see id.* at 3, had minimal incentive to enter into such a renewal. I am therefore wary of the proposition that landowners who want to benefit from the shale gas beneath their property should simply enter into leases, or drill their own wells. *See Briggs v. Sw. Energy Prod. Co.,* 184 A.3d 153, 163 (Pa. Super. 2018) ("Hydraulic fracturing is a costly and highly specialized endeavor, and the traditional recourse to 'go and do likewise' is not necessarily readily available for an average landowner.") (citation omitted).

A.3d at 164. Given the state of the record, which was apparently not complete at the time the trial court erroneously entered summary judgment, I would remand the matter to that court for further proceedings, including the completion of discovery on the factual question of physical invasion, and trial thereon as necessary.

Justice Donohue joins this opinion.